UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARIA VARGAS, MARTIN VARGAS, ANGELICA VARGAS, AUGUSTIN VARGAS, ARNULFO BERMUDEZ, JORGE VARGAS, and PEDRO GARCIA,

Plaintiffs,

v.

COUNTY OF YOLO, YOLO COUNTY SHERIFF'S OFFICE, EDWARD PRIETO, HECTOR BAUTISTA, REIKO MASTSUMARA, and GARY HALLENBECK,

Defendants.

No. 2:15-cv-02537-TLN-CKD

**ORDER GRANTING MOTION FOR LEAVE TO SUPPLEMENT THE FIRST AMENDED ANSWER**

This matter is before the Court pursuant to Defendants County of Yolo, Yolo County Sheriff's Office, Edward Prieto, Hector Bautista, Reiko Matsumura, and Gary Hallenbeck's (collectively, "Defendants") Motion for Leave to Supplement the First Amended Answer ("FAA"). (Mot. for Leave, ECF No. 48.) Plaintiffs Maria Vargas, Martin Vargas, Angelica Vargas, Augustin Vargas, Arnulfo Bermudez, Jorge Vargas, and Pedro Garcia (collectively, "Plaintiffs") filed an opposition (Opp'n to Mot. for Leave, ECF No. 49), and Defendants filed a reply, (Reply to Mot. for Leave,

1

ECF No. 50). For the reasons set forth below, the Court hereby GRANTS Defendants' motion. (ECF No. 48.)

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

On December 8, 2015, Plaintiffs filed a complaint against Defendants for various violations of civil and constitutional rights arising out of an incident occurring at the Vargas family home on March 8, 2015. (ECF No. 1.) Specifically, Plaintiffs alleged the following causes of action: (1) Excessive Force in Violation of the Constitution; (2) False Arrest in Violation of the Constitution; (3) Unlawful Suppression/Prior Restraint in Violation of the Constitution; (4) Failure to Intervene; (5) Inadequate Policies, Customs, or Practices; (6) Inadequate Training, Supervision, or Discipline; (7) Battery; (8) False Arrest in Violation of California Law; (9) Unlawful Suppression/Prior Restraint in Violation of California Law; (10) Negligence; (11) Intentional Infliction of Emotional Distress; and (12) Violation of the Bane Act. (ECF No. 1.) The allegations underlying this case were addressed at great length in this Court's prior order and are incorporated herein by reference. (*See* ECF No. 32.)

On January 28, 2016, Defendants filed an answer, asserting eleven affirmative defenses, including collateral estoppel and res judicata based on ongoing criminal proceedings against Plaintiffs. (ECF No. 12 at 10–11.) On February 17, 2016, Defendants filed an ex parte application for an order staying proceedings pending the resolution of Plaintiffs Jorge Vargas ("Jorge") and Maria ("Maria") Vargas's criminal cases. (ECF No. 14.) Defendants argued the Court should stay the proceedings because the outcome of the criminal cases could bar some of Plaintiffs' claims under collateral estoppel and the *Heck* doctrine. (ECF No. 14 at 4–6.) On March 21, 2016, the Court denied Defendants' motion to stay, holding a stay was not warranted and explaining that collateral estoppel and the *Heck* doctrine did not yet apply because there were no final judgments. (ECF No. 21 at 3.)

On February 28, 2016, Plaintiffs filed a motion to strike all affirmative defenses in Defendants' answer. (ECF No. 16.) On July 20, 2016, the Court granted in part and denied in part Plaintiffs' motion to strike Defendants' affirmative defenses with leave to amend. (ECF No.

32.) The Court specifically struck Defendants' collateral estoppel and res judicata defenses, holding these defenses were premature because there were no final judgments in Plaintiffs' criminal cases. (ECF No. 32 at 15–16.) However, the Court noted that Defendants' could assert these defenses, to the extent they applied, if final judgments were reached in Plaintiffs' criminal cases. (ECF No. 32 at 16.) On August 3, 2016, Defendants filed the FAA, which alleged six affirmative defenses, none of which included defenses based on Plaintiffs' criminal cases. (ECF No. 33.) On August 24, 2016, Plaintiffs filed a motion to strike the affirmative defenses in Defendants' FAA. (ECF No. 34.) On June 7, 2018, the Court granted in part and denied in part Plaintiffs' motion to strike Defendants' affirmative defenses without leave to amend. (ECF No. 73.)

On October 6, 2015, Plaintiff Arnulfo Bermudez ("Arnulfo") pled no contest to charges relating to possession of methamphetamines, possession of methamphetamine paraphernalia, and a probation violation in connection with the incident alleged in the complaint. (ECF No. 49 at 6.) On November 22, 2016, nearly a year before the close of discovery, Defendants deposed Arnulfo and discovered his no contest plea. (ECF No. 48-1 at 3.) On November 1, 2016, Jorge and Maria were convicted of California Penal Code § 148(a) by a jury in Yolo County, as a result of the same incident alleged in the complaint. (ECF No. 48-1 at 3.)

On December 15, 2016, after unsuccessful attempts with Plaintiffs to stipulate to Defendants amending the FAA, Defendants filed the instant motion, seeking to supplement the FAA with the affirmative defenses of res judicata, collateral estoppel, and the *Heck* doctrine against Jorge and Maria, and the *Heck* doctrine only against Arnulfo. (ECF No. 48-1 at 2–3.)

## II.     STANDARD OF LAW

Federal Rule of Civil Procedure ("Rule") 15(d) governs supplemental pleadings. Under Rule 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d); see also *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010) ("Rule 15(d) provides a mechanism for parties to

file additional causes of action based on facts that didn't exist when the original [pleading] was filed."). A trial court has broad discretion in deciding whether to permit a supplemental pleading. *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). In deciding whether to permit a supplemental pleading, a court's focus is on judicial efficiency. *See Planned Parenthood v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997). "Supplementation is generally favored because it promotes judicial economy and convenience." *Lyon v. U.S. Immigration & Customs Enf't*, 308 F.R.D. 203, 214 (N.D. Cal. 2015) (citing *Keith*, 858 F.2d at 473).

The five factors used to evaluate a motion for leave to amend are commonly used to evaluate a motion for leave to supplement. *Id.* These factors include "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[T]he consideration of prejudice to the opposing party carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice or a 'strong showing' of any other . . . factor, there is a presumption in favor of granting leave to supplement." *Lyon*, 308 F.R.D. at 214.

### III. ANALYSIS

Defendants move to supplement the FAA to add the affirmative defenses of collateral estoppel, res judicata, and the *Heck* doctrine against all of Jorge and Maria's claims, and the *Heck* doctrine only against Arnulfo's claims for False Arrest[1] and Failure to Intervene. Defendants argue they have satisfied all five factors pursuant to Rule 15(d), and thus, should be granted leave to file a supplemental answer. (ECF No. 48-1 at 4–6.) Plaintiffs, conversely, contend Defendants have not met the good cause requirement of Rule 16(b), which they argue is required once the scheduling order's deadline for amendment of the pleadings has passed. (ECF No. 49 at 7–11.) Plaintiffs further maintain Defendants have not satisfied any of the five factors pursuant to Rule 15(d). (ECF No. 49 at 11–19.) The Court will address each of Plaintiffs' arguments in turn.

---

[1] The parties stipulated to dismiss Jorge and Arnulfo's claims for False Arrest on February 7, 2018. (ECF No. 61.) The Court dismissed these claims with prejudice on February 12, 2018. (ECF No. 62 at 3.)

4

### A. Rule 16(b) Good Cause Requirement

Plaintiffs argue that Defendants failed to demonstrate good cause, which they contend is required by Rule16(b) once the scheduling order's deadline for amendment of the pleadings has passed. (ECF No. 49 at 7–11.) As the scheduling order's deadline for amending the pleadings has passed in this case, Plaintiffs argue Rule 16(b) precludes Defendants from supplementing the FAA. (ECF No. 49 at 7–11.)

Plaintiffs are correct that when the Court issues a pretrial scheduling order that establishes a timetable to amend the pleadings, Rule 16(b) governs any amendments to the pleadings. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). To allow for amendment under Rule 16(b), a party must demonstrate good cause for not having amended the pleading before the time specified in the pretrial scheduling order. *Id.* However, Defendants' proposed defenses relating to Jorge and Maria's jury trials occurred after the filing of the FAA, and are therefore requests to supplement, rather than amend the FAA. Rule 16 does not require courts to set a deadline for supplemental pleadings, which cover transactions, occurrences, or events that happen after a pleading is filed, and the Court did not set such a deadline in the scheduling order. *See Ohio Valley Envtl. Coal. v. United States Army Corps of Eng'rs*, 243 F.R.D. 253, 256 (S.D. W. Va. 2007) ("Rule 16 does not require courts to set a deadline for supplemental pleadings and the Court did not set such a deadline in the Scheduling Order."); *Fremont Inv. & Loan v. Singleton*, No. 2:03-CV-1406-PMP-RJJ, 2007 U.S. Dist. LEXIS 30234, at *20-21 (D. Nev. Apr. 20, 2007) (same). Accordingly, Rule 16(b) is inapplicable to Defendants' proposed defenses relating to Jorge and Maria's jury trials, and Defendants need not demonstrate good cause in order to supplement the FAA with these defenses.

Even if a showing of good cause was required for supplemental defenses, it is clear Defendants have demonstrated it. The good cause standard primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). The focus of the inquiry is on the reasons why the moving party seeks to modify the complaint. *Id.* The Court explicitly instructed Defendants to bring their res judicata and

collateral estoppel defenses in a Rule 15 motion, if and when there were final judgments that could be used as the bases for such defenses. (ECF No. 32 at 16.) Defendants did just this. They brought the instant Rule 15 motion within sixty days of Jorge and Maria's convictions.[2] (*See* ECF No. 48-2 ¶ 4.) No amount of diligence would have allowed Defendants to discover these facts sooner, as Jorge and Maria's trials had not yet occurred. Therefore, Defendants are merely acting in accordance with the Court's prior order, and have demonstrated good cause to assert res judicata, collateral estoppel, and the *Heck* doctrine defenses based on Jorge and Maria's jury trials.

The majority of Plaintiffs' opposition focuses on the argument that Defendants should be precluded from asserting a *Heck* doctrine defense based on Arnulfo's no contest plea because it is not "new and previously unavailable information."[3] (ECF No. 49 at 9.) Plaintiffs argue Defendants should have known of Arnulfo's plea at some earlier unidentified date prior to Arnulfo's deposition because of their receipt of Arnulfo's JUS 8715 form, and therefore should have pled defenses related to Arnulfo's plea at some earlier unidentified date. (ECF No. 49 at 9.) However, Plaintiffs fail to explain, even generally, when Defendants received the JUS 8715 form and subsequently when would have been an appropriate time to plead a defense related to Arnulfo's plea. Plaintiffs also fail to explain what information the form contains, and the Court has been provided with an illegible copy. (*See* ECF No. 49-1 at 12.) Therefore, it is unclear whether Defendants should have discovered Arnulfo's plea prior to his deposition, and if so, how long before his deposition they should have discovered it. However, it is clear that Defendants discovered Arnulfo's plea nearly a year before the close of discovery, and then proposed a related defense within thirty days of this discovery. (*See* ECF No. 48-2 ¶ 5.) On this basis, the Court finds Defendants acted diligently. Accordingly, the Court finds Defendants have demonstrated good cause to assert a *Heck* doctrine defense based on Arnulfo's no contest plea.

---

[2] Defendants claim they would have filed this motion sooner, but attempted to first obtain a stipulation in an effort to avoid expending judicial time and resources on a formal motion. (ECF No. 48-2 ¶¶ 6–9.)

[3] The Court notes this is technically an amendment under Rule 15(a) rather than a supplement under Rule 15(d), and therefore Defendants must first demonstrate good cause. However, Defendants' misnaming of the amendment does not affect the Court's ruling.

6

B. Rule 15 Factors

Plaintiffs argue Defendants have failed to demonstrate they are entitled to leave to file a supplemental answer because they have not met any of the five factors pursuant to Rule 15(d). (ECF No. 49 at 11–19.) The Court disagrees. In considering whether a party should be granted leave to supplement a pleading, the Court considers the following factors: "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Lyon*, 308 F.R.D. at 214. "[T]he consideration of prejudice to the opposing party carries the greatest weight." *Eminence Capital, LLC*, 316 F.3d at 1052. "Absent prejudice or a 'strong showing' of any other . . . factor, there is a presumption in favor of granting leave to supplement." *Lyon*, 308 F.R.D. at 214.

First, there has been no undue delay as Defendants' instant motion was brought less than sixty days since Jorge and Maria were convicted, and less than thirty days since Defendants deposed Arnulfo and learned of his plea.[4] (*See* ECF No. 48-2 ¶¶ 4–5.) Plaintiffs have failed to demonstrate how the inclusion of such defenses would require any further discovery or cause any delay in the proceedings. Second, there is no bad faith or dilatory motive on behalf of Defendants, who are merely reasserting the crux of the same affirmative defenses stated in their original answer and following the Court's instructions to bring these defenses following final judgments. Third, there is no repeated failure of previous amendments as Defendants only asserted some of these defenses once, and the Court directed Defendants they may later reassert these defenses. Fourth, Plaintiffs have demonstrated no undue prejudice. They have been well aware since Defendants filed their original answer that Defendants sought to assert defenses based on Plaintiffs' criminal proceedings. Fifth, the proposed affirmative defenses are not futile. Res judicata, collateral estoppel, and the *Heck* doctrine may be used to prevent civil causes of action where criminal convictions are obtained based on the same incident. *See Smithart v.*

---

[4] As discussed above, Plaintiffs fail to explain why Defendants should have become aware of Arnulfo's plea earlier than this time. *See supra* Section III.A.

7

*Towery*, 79 F.3d 951, 952 (9th Cir. 1996) ("*Heck*, in other words, says that if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed."); *see, e.g.*, *Ewing v. Superior Court of Cal.*, 90 F. Supp. 3d 1067, 1075 (S.D. Cal. 2015) (holding the plaintiff's claims were barred by res judicata, collateral estoppel, and the *Heck* doctrine based on his criminal conviction). Plaintiffs have not demonstrated why these defenses would not be applicable here. Therefore, all five factors weigh in favor of Defendants, and the Court finds Defendants are entitled to supplement the FAA.

**IV.     CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion for Leave to Supplement the First Amended Answer. (ECF No. 48.)

IT IS SO ORDERED.

Dated: June 29, 2018

Troy L. Nunley
United States District Judge